**Michael J. GORRA, Appellee,**

v.

**Floyd HANSON, Patrick Chase, Appellants.**

**Minnesota State Highway Patrol, an agency or division of the State of Minnesota.**

**No. 88–5012.**

United States Court of Appeals, Eighth Circuit.

Submitted: June 13, 1988.

Decided July 24, 1989.

Richard S. Slowes, St. Paul, Minn., for appellants.

Richard J. Sundberg, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, BROWN, Senior Circuit Judge [*], and WOLLMAN, Circuit Judge.

---

[*] THE HONORABLE JOHN R. BROWN, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

WOLLMAN, Circuit Judge.

Michael Gorra filed suit against Troopers Floyd Hanson and Patrick Chase (the troopers) of the Minnesota State Highway Patrol under 42 U.S.C. § 1983, alleging that Hanson and Chase had arrested him without probable cause and thus deprived him of liberty without due process of law. Hanson and Chase appeal the district court's denial of their motion for summary judgment. We reverse and remand.

## I. BACKGROUND

Sometime after 4:00 a.m. on September 15, 1985, Trooper Chase discovered an abandoned, overturned vehicle (the Blazer) on the unpaved lane in a construction site on Interstate Highway 35W near Diamond Lake Road in Hennepin County. Trooper Hanson joined Chase at the scene. Although the troopers were unable to find the driver, they did discover that the Blazer was registered to either Richard Gorra or Michael Gorra. The troopers noticed blood on the Blazer's steering column. They also found several recently-issued traffic citations charging Richard Gorra with alcohol-related driving offenses. Based upon the hundreds of accidents that they had investigated, the troopers inferred that the driver was Richard, that his license had been revoked due to the driving offenses, and that he had fled the scene because he had been driving without a license.

Meanwhile, Richard called Michael Gorra to tell him about the accident and the Blazer's approximate location and that his only injury was a scraped hand. Michael Gorra drove immediately to the accident site.

After Michael Gorra reached the accident, both troopers questioned him. Michael Gorra identified himself, identified his son as the owner and driver of the Blazer, and explained that he had come from his home in Chanhassen to retrieve some personal property. He stated that he had been home in bed when Richard called

and told him about the accident. In response to further questioning by both troopers, Michael Gorra insisted that he did not know where Richard was. Michael Gorra did not tell the troopers that Richard's grandmother and some of Richard's friends lived in the immediate area, nor did he tell them that he, Michael, had an office within blocks of the accident scene. Instead, he continued for the next twenty minutes to collect keys and other items scattered over the area.

According to the troopers, Michael Gorra seemed much more concerned about picking up the property, which appeared to have little value, than about learning the condition or location of his son. The troopers also observed that Michael Gorra appeared nervous and evasive and that he trembled while speaking. Moreover, the troopers believed that the timing of Michael Gorra's arrival at the accident scene was inconsistent with his story of coming from his home. The troopers therefore began to suspect that Michael Gorra did know where Richard was. They warned him several times that if he was lying or withholding information, they would arrest him for obstruction of justice.

As Michael Gorra drove away from the scene of the accident, Trooper Chase attempted to follow in his patrol car but lost sight of him. After obtaining an address from their dispatcher, the troopers found Michael Gorra and Richard at Michael Gorra's office, a few blocks from the accident scene. Trooper Hanson arrested Richard and led him out to the patrol car. Michael Gorra followed and advised Richard to remain silent. Trooper Chase then arrested Michael for obstruction of legal process under Minn.Stat. § 609.50 (1984).[1] The charges against Michael Gorra were eventually dismissed at the request of the prosecutor, but not upon the ground that probable cause was lacking for the arrest.

Michael Gorra brought an action against Hanson and Chase and the Minnesota State

---

**1.** That statute provides in part:

Whoever intentionally obstructs, hinders, or prevents the lawful execution of any legal process, civil or criminal, or apprehension of another on a charge or conviction of a crimi-

nal offense or obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties * * * may be sentenced * * *.

Patrol[2] under 42 U.S.C. § 1983, contending that probable cause did not exist for his arrest and that he had therefore been deprived of liberty without due process of law in violation of the fourteenth amendment. Depositions were taken of Hanson and Chase and of Richard and Michael Gorra. Thereafter, Hanson and Chase moved for summary judgment. The district court denied their motion, finding that it could not decide the applicability of the defense of qualified immunity without further development of the facts.

## II. DISCUSSION

A law enforcement officer is shielded by qualified immunity from civil liability if the officer "[did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See also Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Under the "objective legal reasonableness standard," courts are not to delve into the subjective motivation of the arresting officer. *Harlow*, 457 U.S. at 815–19, 102 S.Ct. at 2736–39. *Cf. Graham v. Connor*, —— U.S. ——, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

In reviewing an allegation that probable cause was lacking to make a warrantless arrest, the court should

"consider whether the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed ... an offense. Probable cause is to be assessed in terms of the circumstances confronting a reasonably cautious police officer at the time of the arrest, and the arresting officer is entitled to consider the circumstances, including arguably innocent conduct, in light of his training and experience. '[T]he probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'"

*Myers v. Morris*, 810 F.2d 1437, 1455 (8th Cir.) *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987) (quoting *Hannah v. City of Overland*, 795 F.2d 1385, 1389 (8th Cir.1986) (citations omitted)). In determining whether the defense of immunity exists, the issue is "not probable cause in fact but 'arguable' probable cause." *Id.* (quoting *Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir.1985)). Qualified immunity protects law enforcement officers in cases in which they "reasonably but mistakenly conclude that probable cause is present * * *." *Anderson*, 107 S.Ct. at 3039. Actual probable cause, therefore, is not necessary for an arrest to be objectively reasonable. Under this standard, all public officials are protected except the "plainly incompetent" and those who are deemed to have "knowingly violate[d] the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

Whether an official's conduct was objectively reasonable is a question of law, *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738, and should be decided at the earliest possible stage of litigation. *Anderson*, 107 S.Ct. at 3042 n. 6. Under the undisputed facts established by the depositions, a reasonable officer could have believed that probable cause existed to arrest Michael Gorra for obstruction of legal process in violation of Minn.Stat. § 609.50. The troopers could reasonably have believed that Michael Gorra was lying when he stated that he did not know where Richard could be. His staying to pick up the scattered property was inconsistent with the actions of a father who does not know the location of a son who has been involved in a serious accident. Michael Gorra's appearance with his son at his office soon after leaving the accident could reasonably be construed as a planned rather than a coincidental meeting, giving lie to his earlier denial of any knowledge of Richard's whereabouts.

The objective legal reasonableness of the troopers' conduct must be evaluated in

**2.** The Minnesota State Patrol was voluntarily dismissed with prejudice by stipulation of the parties.

light of law that was clearly established when the arrest occurred. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. At the time of the arrest, September 1985, the Minnesota courts had not yet defined the conduct that would violate section 609.50.[3] In the absence of any judicial interpretation to the contrary, a reasonable officer could have concluded that lying about the whereabouts of a suspect constituted "obstructing" or "hindering." Because the law had not been construed at the time of the arrest, and because the troopers' interpretation was not inconsistent with common understanding, we cannot say that the troopers' interpretation of the statute was unreasonable. Accordingly, Hanson and Chase are entitled to be shielded from liability under the defense of qualified immunity.

The judgment is reversed, and the case is remanded for the entry of judgment of dismissal.

LAY, Chief Judge, dissenting.

I respectfully dissent. The majority has overlooked a factual issue which should be submitted to a jury. On this basis I would affirm the district court.

In the early morning hours of September 15, 1985, Trooper Patrick Chase of the Minnesota State Highway Patrol discovered an abandoned Blazer which had just rolled over on Interstate 35 West (I–35W). Chase immediately radioed for assistance and then searched the scene to no avail for the driver of the vehicle. Trooper Floyd Hanson soon arrived to assist Chase. Together they searched the vehicle and discovered that it was registered to Richard Gorra. They also discovered several traffic citations that had been issued to Richard Gorra for alcohol-related driving offenses. The troopers suspected that Richard Gorra had been driving the vehicle when it rolled and that he had fled because his license had been revoked.

In the meantime, Michael Gorra, Richard's father, received a phone call from his son informing him that he had rolled his Blazer on I–35W. According to Michael, Richard hung up without telling his father the location from where he was calling. Michael Gorra immediately drove to the scene of the accident. Upon arriving on the scene, he began picking up keys which had been in the Blazer but were strewn about the highway due to the accident. These were master keys to apartment houses that Michael Gorra owned. Hanson approached Gorra and asked him who he was and what he was doing. Gorra stated that he was Richard's father and that his son had called him about the accident. Upon further questioning, he denied having any knowledge of his son's whereabouts. Hanson suspected that Gorra was lying and warned him that doing so would subject him to arrest for obstruction of legal process. Chase, who also questioned Gorra, harbored the same suspicions and issued the same warning.

Michael Gorra eventually left the scene of the accident to search for his son. He found Richard hiding in the bushes near the home of a relative and told his son to meet him at his office. Meanwhile Chase, who had unsuccessfully attempted to follow Michael Gorra,[1] went to Gorra's office with Hanson on the chance that they would find Richard hiding there. Upon arriving at the address, the troopers spotted Michael Gorra's car in the parking lot. They proceeded to Gorra's office where they found both Michael and Richard. Hanson placed Richard under arrest and led him out to the patrol car. Michael followed them and advised his son to remain silent. At that point, Chase placed Michael under

---

**3.** In *State v. Krawsky,* 426 N.W.2d 875 (Minn. 1988), the Minnesota Supreme Court interpreted section 609.50 as prohibiting only intentional physical obstruction or interference with a police officer in the performance of his official duties and held that the statute was not facially overbroad or vague. *Cf., City of Houston, Tex. v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).

**1.** Trooper Chase contends that Gorra became aware of the tail and attempted to elude the trooper. These attempts were successful when Gorra, according to Chase, shut off his lights and turned down a side street. Chase Dep. at 35.

arrest for obstruction of legal process. Minn.Stat. § 609.50 (1984).[2] Gorra was processed on this charge which was subsequently dismissed at the prosecution's behest.

Michael Gorra filed an action against the troopers and the Minnesota State Highway Patrol in federal district court under section 1983 alleging unlawful arrest. Gorra claims that the arrest was made in retaliation for advising his son to remain silent. The troopers contend that there was sufficient probable cause based on their belief that Gorra had lied to them and concealed his son's whereabouts. The district court[3] denied defendants' motion for summary judgment. The court determined that it could not rule on the availability of the qualified immunity defense without further development of the facts surrounding Gorra's arrest.

There is no dispute in this case on the matters of when and where Michael Gorra was placed under arrest. The district court denied defendants' summary judgment because there is a genuine issue of material fact concerning whether there was sufficient probable cause to arrest Gorra.

The constitutionality of an arrest is determined by whether it was made with or without probable cause. If there is probable cause for the arrest, then plaintiff's section 1983 action is barred. *Deary v. Three Un-named Police Officers,* 746 F.2d 185, 192–93 (3d Cir.1984). *See also Mark v. Furay,* 769 F.2d 1266, 1268–69 (7th Cir. 1985). If the arrest was made without probable cause, then it was unconstitutional and the test for immunity is whether the police officer *"knew or reasonably should have known* that the action he took within the sphere of official responsibility would violate the [plaintiff's] constitutional rights * * *." Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (original emphasis).

In this case, Gorra claims that there was no probable cause but that in fact he was

arrested in retaliation for having told his son he need only speak to a lawyer. The officers argue that they believed that Gorra had concealed his son's whereabouts and that this provided probable cause to arrest him for obstruction of legal process. The circumstances in *Gorra* do not provide a way of circumventing the need to answer the factual issues surrounding plaintiff's arrest and deciding the issue of probable cause as a matter of law. Indeed, it is difficult to imagine too many instances that would allow a law enforcement officer to arrest an individual because he informed someone of the right to remain silent. Thus, the issue of whether Gorra was arrested because the troopers had reasonable suspicion to believe he had lied to them or because he told his son to remain silent is an issue that should be determined by a jury. *Wagenmann v. Adams,* 829 F.2d 196, 206 (1st Cir.1987); *Wilson v. Attaway,* 757 F.2d 1227, 1236 (11th Cir.1985); *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1347 (7th Cir.1985); *Bilbrey v. Brown,* 738 F.2d 1462, 1467 (9th Cir.1984). *Cf. Losch v. Borough of Parkersburg, Pa.,* 736 F.2d 903, 908 (3d Cir.1984).

Gorra's position that there was no probable cause for his arrest may be argued under two different but equally viable theories. First, he contends that the arrest was retaliatory. Rather than arresting him for obstruction of legal process, the officers actually took Gorra into custody in retaliation for the statement he made at the time of his son's arrest. In a case similar to *Gorra,* the Seventh Circuit Court of Appeals found that the reason for an arrest was material to determining whether a constitutional violation had occurred. *Bailey v. Andrews,* 811 F.2d 366 (7th Cir.1987). In *Bailey,* plaintiff was arrested for disorderly conduct following a heated exchange of words with a police officer. *Id.* at 368. Plaintiff brought suit under section 1983 alleging that he had been unlawfully arrested. The Seventh Circuit affirmed a verdict in favor of plaintiff stating that it

---

**2.** The court notes that this statute has recently survived an attack of its constitutionality. *State v. Krawsky,* 426 N.W.2d 875, 879 (Minn.1988).

**3.** The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

was for the jury to decide whether plaintiff had been arrested for disorderly conduct or for exercising his first amendment right to speak freely. *Id.* at 372. Similarly, in the instant case there is a factual issue for the jury to determine with regard to whether plaintiff was arrested for obstruction of legal process or for advising his son to remain silent. At this juncture of the case, the court must presume that Gorra will be able to prove that he was arrested in retaliation for having advised his son to remain silent. Such action constitutes obvious infringement of well established first and fourth amendment rights.

Second, even if the officers arrested Gorra for obstruction of legal process, the arrest would nonetheless have been unconstitutional absent the existence of probable cause. The undisputed facts in this case are as follows: (1) Gorra's son had an accident and left the scene; (2) Gorra received a phone call from his son and went to the scene of the accident; (3) Officer Hanson and Chase later found Gorra with his son at Gorra's office; (4) the son was placed under arrest and, as the officers left with the son in custody, Gorra told his son that he need only speak to a lawyer; (5) upon making this statement Gorra was immediately placed under arrest; and (6) Gorra was not prosecuted.

Objectively viewing the above-stated factual circumstances to determine the existence of probable cause, it cannot be said that as a matter of law probable cause existed for the arrest. Plaintiff alleges that he was at all times honest in discussions with the officers and that they were unreasonable in their behavior toward him. Viewing the facts most favorable to the plaintiff, the appropriate standard of review of a denial of summary judgment, a jury could find that the officers could not reasonably have believed that Gorra had obstructed legal process. A jury could find that Gorra had not lied to the officers, and that he was not simultaneously arrested with the son but rather arrested immediately after he had told his son that he had a right to remain silent. *Cf. Bailey*, 811 F.2d at 371.[4] Under these circumstances, I find that reasonable people could draw different inferences on the question of whether there was probable cause for the arrest. Thus, the district court correctly denied the defendants' motion for summary judgment because, viewing all of the facts "in the light most favorable to plaintiff, there is [a] genuine issue, triable to a jury, of improper motivation." *Wright v. South Ark. Regional Health Care, Inc.*, 800 F.2d 199, 203 (8th Cir.1986).

Until the factual issues of whether the officers' arrest was pretextual and whether there was probable cause are decided, the court need not and cannot pass upon the question of good faith immunity. *Reardon v. Wroan*, 811 F.2d 1025, 1030 (7th Cir. 1987). If the jury would find sufficient probable cause for the arrest, then the court would not have to pass on the issue of qualified immunity since no unconstitutional arrest would have occurred. If probable cause for the arrest was lacking either because the jury would find the officers' conduct was retaliatory for Gorra exercising free speech or because there were insufficient facts for a reasonable officer to arrest Gorra for obstruction of legal process, then and only then would it be necessary to pass upon the question of qualified immunity.[5]

---

**4.** In striking similarity to the present facts, the Seventh Circuit observed:

> The jury was instructed on the elements of Indiana's disorderly conduct statute, and also on the concept of probable cause. If the jury believed Bailey's testimony and that of witness Gary Lueck, it could reasonably have found that Andrews did not have probable cause to arrest Bailey under that statute. The jury also could have found that Andrews acted in bad faith in arresting Bailey. The jury

thus could have found that Andrews's arrest of Bailey violated Bailey's fourth amendment right to be free from unreasonable seizures. *Id.* at 373.

**5.** This holding would not be contrary to the objective good faith test now required under *Harlow*. Post–*Harlow* cases exclude the subjective intent of the arresting officer in determining good faith relevant to the issue of qualified immunity. Here the issue is not one of good

---

faith but whether the officers made an illegal arrest outside of the constitutional sphere of probable cause. And although one may view probable cause to arrest within the objective sphere of existing factual circumstances, the issue of probable cause is for the jury where there exists a dispute of fact as to whether the arrest was pretextual. *Bailey v. Andrews,* 811 F.2d 366 (7th Cir.1987).