**John DEES, Plaintiff,**

v.

**CITY OF MIAMI, a Municipal Corporation, Herbert Breslow, Individually and as Assistant Chief of Police, Robert Warshaw, Individually and as Assistant Chief of Police, William Fleming, Individually, Ernest Vivian, Individually, and Ronald Ilhardt, Individually, Defendants.**

No. 87–1828–CIV.

United States District Court, S.D. Florida.

Sept. 12, 1990.

Thomas R. Spencer and Samuel B. Reiner, Spencer & Klein, P.A., Miami, Fla., for plaintiff.

Peter J. Hurtgen, Morgan Lewis & Bockius, Miami, for individual defendants.

Charles C. Mays, Asst. City Atty., Miami, for City of Miami.

FINAL SUMMARY JUDGMENT FOR DEFENDANTS AND DISMISSAL OF STATE CLAIMS WITHOUT PREJUDICE

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon the Defendants' Motions for Summary Judgment.

THE COURT has heard oral argument on the defendants' motions for summary judgment, considered the memoranda, appendices, depositions and affidavits filed in support of and opposition to the motions and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the said Motions be, and the same are hereby GRANTED for the reasons given below. It is further

ORDERED AND ADJUDGED that the Counts XI and XII of the Amended Complaint, the pendent state claims, be and the same hereby are DISMISSED without prejudice to any right the plaintiff may have to proceed with these counts in a state court of competent jurisdiction. *See United Mine Workers v. Gibbs, infra.*

I

PROCEDURAL HISTORY

Plaintiff has brought suit against the City of Miami pursuant to 42 U.S.C. § 1983 claiming a violation of his Fourth and Fourteenth Amendment rights. In Counts II and IV of the Amended Complaint, the plaintiff claims that his arrest for committing perjury in an official proceeding, in violation of Fla.Stat. § 837.02, was directly caused by a City policy, custom or usage that required or allowed police officers to intentionally use or to be deliberately indifferent to the use of false evidence in support of false arrests. In Counts VI and VIII, the plaintiff claims he was prosecuted for perjury, in violation of his constitutional rights, as a direct consequence of the same policy, custom or usage.

The plaintiff has also brought § 1983 claims against co-defendants Herbert Bres-

low, Robert Warshaw, William Fleming, Ernest Vivian, and Ronald Ilhardt. Counts I and III of the Amended Complaint seeks to hold the individual defendants liable pursuant to § 1983 for arresting the defendant on the basis of false, fabricated or misleading evidence which they knew to be false or which they obtained with deliberate indifference to its truth, through gross negligence or in reckless disregard of its truth. Counts V alleges that the individual defendants prosecuted the plaintiff on the basis of knowingly false evidence.

Lastly, plaintiff brings two pendent state claims against the city and the individual defendants. Counts XI and XII of the Amended Complaint bring state actions for false arrest and imprisonment and for malicious prosecution. The remaining counts of the Amended Complaint have been dismissed or withdrawn. In August of 1989, all the remaining defendants moved for summary judgment. Defendants Fleming, Vivian and Ilhardt contend that the qualified immunity doctrine put forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) entitles them to summary judgment. Defendants Breslow, Warshaw and the City of Miami maintain that the plaintiff has failed to put forth sufficient evidence from which a reasonable jury could infer that they caused any violations of the plaintiff's constitutional rights.

## UNDISPUTED FACTS AND DISPUTED FACTS IN LIGHT MOST FAVORABLE TO THE PLAINTIFF[1]

At approximately 2:36 P.M., on Saturday, May 17, 1980, a verdict of acquittal was handed down by an all white jury in the trial of five white Dade County Public Safety Department officers accused in the beating death of a black motorcyclist named Arthur McDuffie. Word of this verdict spread throughout the City of Miami and ultimately resulted in one of the deadliest and most violent riots ever to take place in the United States. The "McDuffie Riot" or the "1980 Miami Riot" as it would be-

come known lasted roughly through Tuesday, May 20, 1980.

This case stems from an incident that occurred during the riot on the afternoon of Sunday, May 18, 1980, at or near a shopping center located in the riot area. At or near the east entrance of that shopping center, a collision occurred between a City of Miami police car and a white Ford LTD driven by one Michael Johnson. The police car was driven by the Plaintiff, John Dees, who was accompanied by fellow officers Kenneth Kemp and George Roschel. Prior to the time of the collision, extensive looting had been taking place in the shopping center and this police car was a part of a larger contingent of police officers engaged in an action to retake that shopping center from the looters. Michael Johnson was allegedly shot in both arms at a time roughly contemporaneous with the collision. After the collision, Michael Johnson's vehicle continued past the point of collision, thereafter hitting a pedestrian and finally coming to rest against a light pole at one corner of the shopping center. Michael Johnson abandoned his car and fled on foot down a nearby street, where he collapsed and was taken to the hospital by local residents.

In the days and weeks that followed, an investigation into this incident was begun. During the course of this investigation, certain witnesses were interviewed and other evidence was gathered and examined. The investigators observed that inside the car was what appeared to be blood and that on the driver's side of the vehicle there appeared to be bullet holes into the frame of the door. No determination was made, however, as to how Michael Johnson was shot. This investigation was highly criticized. Police department investigators later associated with the investigation characterized these 1980 investigative efforts as "mishandled" and as a "noninvestigation." Apparently, a dispute arose as to whether the homicide or internal security division of the City of Miami Police Department was responsible for the investigation

---

1. The statement of facts is taken in large measure from the plaintiff's statement of facts contained in his Proposed Order Denying Motions

for Summary Judgment and/or from disputed facts in the record considered in the light most favorable to the plaintiff.

after the preparation of the initial investigation report. As a result of this dispute, no further investigative activity took place for almost two years. During this time, evidence was misplaced or discarded, and opportunities to interview witnesses were lost.

In 1982, Defendant Vivian, a sergeant in the Miami Police Department, and Ilhardt, a detective police officer, were directed, as members of the "cold case squad," to reopen the investigation and attempt to determine how Michael Johnson was shot. This was in specific response to a letter sent by Michael Johnson's attorney to the City of Miami Police Department requesting information on the status of the investigation. During the following five months, Vivian and Ilhardt interviewed numerous witnesses and examined whatever evidence was still available. Their efforts resulted in the investigation being turned over to the State Attorney's office for the purpose of obtaining additional sworn statements. The State Attorney's Office, after a full review of the case, could not reach a conclusion as to who shot Michael Johnson.

On August 18, 1983, Michael Johnson filed a civil rights action in United States District Court against the city of Miami and certain of its police officers. The following morning, an article appeared in *The Miami Herald* reporting the filing of this lawsuit. That article was highly critical of the City of Miami Police Department's handling of the investigation into this incident. Thereafter, Defendants Fleming, then a lieutenant in the Miami Police Department, Vivian and Ilhardt were assigned to reinvestigate the entire incident. It is the conduct of this third investigation which forms the allegations by plaintiff that his Fourth Amendment right to be free from arrest and imprisonment was infringed by the defendants.

The 1983 reinvestigation into the Michael Johnson shooting was a source of concern for the police chief and given high priority within the department. The investigators were all removed from regular duty in order to concentrate their full time and effort into this investigation. The investigators traveled across the State of Florida and beyond to contact witnesses. Ultimately, Defendants Fleming, Vivian and Ilhardt, together with a State Attorney's Office investigator, traveled to Marion County, Florida, on September 12, 1983 to confront Officer Kenneth Kemp. According to Kemp, those investigators who appeared unannounced at his place of employment threatened and intimidated him indicating, among other things, that his employment was in jeopardy and that they would not rest until he was put behind bars for the shooting of Michael Johnson. The investigators' version of this meeting is quite different. They contend they did not threaten or intimidate Kemp in any way. In either event, the interview in Ocala was concluded with Kemp saying nothing and leaving to talk with his attorney.

Mr. Kemp ultimately agreed to take a polygraph examination on September 23, 1983. Notwithstanding his own prior statements to the contrary, as well as statements by Plaintiff John Dees and Officer George Roschel, Kenneth Kemp admitted to the polygraph examiner that he accidentally fired his police issued shotgun at the time or shortly after the time that Michael Johnson's car struck his police car and that he agreed with both John Dees and George Roschel to cover up that shooting. Thereafter, Mr. Kemp, with his two attorneys present, reiterated his "confession" to Assistant State Attorney George Yoss at approximately 2:00 A.M., the following morning. The following is an excerpt from Mr. Kemp's testimony.

Q. Now what happened as the Johnson vehicle struck your vehicle?

A. As it struck—as his vehicle struck our vehicle, it glanced off and continued south, and as it went by the—my door or my window, I had the shotgun in my hand and I pulled the trigger.

. . . . .

Q. Was there any discussion about what either one of you [Kemp or Dees] would say to homicide?

A. If asked it was either said or implied, nothing.

That "confession," given under a grant of full immunity from prosecution which had been negotiated by Mr. Kemp's attorneys, was materially inconsistent with prior statements given by Mr. Kemp.

Although George Roschel had previously given a sworn statement to the State Attorney's Office, John Dees had never done so and he was therefore subpoenaed for this purpose. Thereafter, on September 30, 1983, John Dees gave a sworn statement to an Assistant State Attorney in the presence of Defendants Fleming, Vivian and Ilhardt. Under a grant of immunity and with his attorney present, Dees denied any involvement in or knowledge of the shooting of Michael Johnson.

Q. At the time of impact with the [Johnson] vehicle, did anybody in your vehicle fire a shot?

A. Not to my knowledge.

Immediately following that sworn statement, Investigators Fleming, Vivian and Ilhardt conferred momentarily with the Assistant State Attorney and then promptly arrested John Dees charging him with five counts of perjury in an official proceeding (Fla.Stat. § 837.02). Immediately following that arrest, Officer George Roschel, still a police officer, was summoned to police headquarters and arrested on perjury charges based upon his prior sworn statement. Ultimately, the charges of perjury against both were fully and finally dismissed after the Supreme Court of Florida ruled in *State v. Fowler,* 466 So.2d 210 (Fla.1985), that statements given in an official proceeding under a grant of immunity could not be used as evidence in a subsequent prosecution for perjury. Four years after his arrest, Dees filed this multi-count action against the City of Miami and the individual defendants.

## II

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The trial judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In deciding a motion for summary judgment, the trial court considers all the evidence in the light most favorable to the nonmoving party and resolves all reasonable doubts in favor of the non-moving party. *Earley and Noe v. Champion International Corp.,* 907 F.2d 1077 (11th Cir. 1990). A trial court is not required, however, to resolve all doubts in such a manner. *Id.* If the non-moving party brings forth evidence in support of its position on an issue on which it bears the burden of proof at trial that "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson,* 106 S.Ct. at 2511. Similarly, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512.

## III

The plaintiff brings three separate counts pursuant to 42 U.S.C. § 1983 against defendants Breslow, Warshaw, Ilhardt, Vivian and Fleming seeking to hold them individually liable for allegedly causing the violation of his civil rights. Counts I and V of the amended complaint allege that these defendants violated the plaintiff's constitutional rights by arresting and prosecuting him for perjury on the basis of false, fabricated and misleading evidence which they knew was false. Count III alleges that these defendants arrested the plaintiff on the basis of false evidence which they obtained with deliberate indifference to its truth, through gross negligence or in reckless disregard of its truth. In essence, the plaintiff claims that these defendants violated his constitutional right under the Fourth and Fourteenth Amend-

ment to be free from arrest absent probable cause.

■ Defendants Fleming, Vivian and Ilhardt move for summary judgment in this action claiming they are entitled to qualified immunity from liability for their actions in Dees' arrest and prosecution. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether a government official violates clearly established rights of which a reasonable person would have known turns on the "objective legal reasonableness" of the action; the government official's subjective intent is irrelevant. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034 at 3038–3040, 97 L.Ed.2d 523 (1987).

■ In this case, the plaintiff does not dispute that the defendants were performing discretionary functions associated with their employment in the City of Miami Police Department when they allegedly performed the acts complained of. Clearly established at the time of Dees' arrest and prosecution, moreover, was Dees' right to be free from arrest and prosecution absent probable cause that he committed a crime. Case law defines probable cause as such "facts and circumstances within an officer's knowledge, of which he or she has reasonable trustworthy information, which would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Von Stein v. Brescher,* 904 F.2d 572 (11th Cir.1990). The critical inquiry with respect to the qualified immunity defense, therefore, is whether the defendants' actions connected with his arrest and prosecution for perjury were objectively reasonable in light of

Dees' right to be free from arrest and prosecution absent probable cause. More specifically, the question is "whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendants *could* have believed that probable cause existed to arrest" and prosecute the plaintiff for perjury. *Id.* at 579 (emphasis added). Qualified immunity in this case, therefore, does not hinge on whether the officers actually had probable cause to arrest the plaintiff. Instead, it depends on whether "arguable probable cause" existed. *Id.* This resolution of the tensions underlying the doctrine of qualified immunity[2] recognizes that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present … [I]n such cases those officials should not be held liable." *Anderson,* 107 S.Ct. at 3040. Moreover, it accords with the goal that qualified immunity protect "all but the plainly incompetent or those who knowingly violate the law." *Id.*

The record before this court clearly supports the defendants' position; reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest and prosecute the plaintiff for perjury once he denied any involvement in or knowledge of the shooting of Michael Johnson. Physical evidence in the investigator's possession supported a conclusion that Michael Johnson had been shot while driving his car on May 18, 1980. The investigators observed what they believed to be blood inside of Mr. Johnson's car. Moreover, police officers observed, and the First Supplementary Report on the shooting noted the existence of a bullet hole in the frame of the door on the drivers' side of Johnson's car. More importantly, Kenneth Kemp not only admitted that he shot Michael Johnson on May 18, 1980, but that John Dees knew of the shooting and agreed to cover it up. Based on the totality of the circumstances, this Court

---

**2.** The doctrine of qualified immunity balances society's interest in providing a remedy for injured victims and discouraging unlawful conduct against the interest in enabling public officials to act independently without fear of consequences. *Von Stein v. Brescher,* 904 F.2d 572 (11th Cir.1990).

finds that a reasonable officer could have determined that probable cause existed to arrest and prosecute the plaintiff for perjury.

The plaintiff, however, argues that the evidence is "susceptible of an interpretation that the outcome of the criminal investigation was predetermined to the extent that a conscious decision was made to publicly prosecute some person or persons in relation to the Michael Johnson shooting." Plaintiff's Proposed Opinion Denying All Pending Motions for Summary Judgment, p. 11. The plaintiff charges that the initial investigation by the homicide unit was incompetently handled; that the city prematurely disposed of Johnson's vehicle; that numerous potential witnesses including one eyewitness, Willie Calhoun, were not interviewed; that no efforts were made to locate the occupants of the van struck by Johnson's car; and that Johnson and Kemp both made inconsistent statements concerning the events of the day. The 1983 investigation, he contends, was a reaction to the devastatingly adverse publicity of the mishandled initial investigation. The plaintiff maintains that the defendants employed unacceptable and prohibited investigative methods during this third investigation. He claims they improperly recorded telephone conversations, attempted to deceive and lie in eliciting witness statements and even threatened and intimidated Kemp into giving his statement to Yoss. Because of the threats and intimidation used against Kemp, in fact, his testimony under oath, according to the plaintiff, "could be interpreted by a reasonable jury to be the result of self interested negotiation and compromise rather than objective and rational investigatory efforts." Plaintiff's Proposed Opinion Denying All Pending Motions for Summary Judgemnt, p. 11. Given all of the above, the plaintiff maintains that the investigators could not have reasonably believed that probable cause existed to arrest and prosecute the plaintiff for perjury.

Plaintiff's argument concerning the public pressure on the police department to find someone responsible for the Michael Johnson shooting, as it goes to the subjective motivations of the investigators, does not bear in any way on the qualified immunity determination. Since its decision in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court eliminated inquiry into a government official's subjective intent on qualified immunity determinations. Under the objective legal reasonableness standard for qualified immunity determinations first put forth in *Harlow* and employed in this case, "courts are not to delve into the subjective motivation of the arresting officer." *Gorra v. Hanson,* 880 F.2d 95 (8th Cir. 1989); *Compare Anderson,* 107 S.Ct. at 3040 ("The relevant question in this case, for example, is the objective (albeit fact specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officer possessed. Anderson's subjective beliefs about the search are irrelevant.") In establishing this new test for qualified immunity, the Supreme Court emphasized that inquiries into an officials subjective intent, as they involve questions of fact inherently requiring resolution by jury, prevent even insubstantial claims from being dismissed at the summary judgment stage. Consequently, the litigation of subjective good faith of government officials involves substantial costs; government officials face the risks of going to trial, are distracted from government duties, are inhibited in undertaking discretionary action and many qualified individuals are dissuaded from ever joining the public sector.

Much of the plaintiff's argument, however, goes to the subjective intent of the investigators. Essentially, the plaintiff argues that a reasonable jury could infer from the evidence that the police department wanted to arrest and prosecute somebody in order to reduce the political pressure the police department faced at the time. The plaintiff implies that the police were not truly concerned with arresting individuals who actually broke the law, only those individuals whose arrest would at least temporarily quell the public outcry. Clearly, the plaintiff asks this court to

delve into the investigators' subjective intentions, which, of course, it cannot do.

Plaintiff's argument that no reasonable officer could have relied upon the confession by Kenneth Kemp in concluding that probable cause existed to arrest and prosecute Dees also fails. The undisputed evidence in the record indicates that the alleged threat to Mr. Kemp's employment and the threat that the investigators would not rest until Mr. Kemp was arrested took place more than a week prior to the time Kemp gave Yoss his sworn statement. Neither side disputes that at the time the alleged threats were made, Kemp, a veteran police officer, made no comments of any substance and instead chose to speak to his attorney rather than speak to the investigators. Nor does either side dispute that at the time Kemp gave his sworn statement he was accompanied and represented by two attorneys. Even in the light most favorable to the plaintiff, the evidence does not show that Kemp's will was overborne thereby rendering his testimony untrustworthy. The court concludes, therefore, that reasonable officers could have relied upon Kemp's statement in determining that probable cause existed to arrest and prosecute the plaintiff.

## IV

■ In their individual capacities, Assistant Chiefs of Police/defendants Warshaw and Breslow contend they are entitled to summary judgment as a matter of law since they played no direct role in the arrest and prosecution of the plaintiff. Defendants argue that sec. 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation. *See* *Zatler v. Wainwright,* 802 F.2d 397 (11th Cir.1986). The plaintiff may establish such a causal connection in a number of ways. For instance, proof that the defendants are personally involved in the investigation, arrest or prosecution of the plaintiff supports a causal link. *Id.* An official also causes a constitutional infringement for purposes of § 1983 when "a policy or custom that he established or utilized results in deliberate indifference" to an individual's constitutional rights. *Zatler* at 401. Alternatively, breach of a state imposed duty which results in a constitutional deprivation also establishes a causal link. *Id.* Defendants note, however, that the "mere right to control without any control or direction having been exercised" over the actions of subordinates does not render a police supervisor liable under sec. 1983. *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1504 (11th Cir. 1985). In this case, the plaintiff argues that defendants Warshaw and Breslow caused the alleged constitutional deprivations by controlling and directing the investigation.

■ The Court finds that the plaintiffs have failed to offer sufficient proof that defendants Warshaw and Breslow exercised their authority and actually controlled the third Michael Johnson investigation. While the plaintiff alleges in his memoranda that Warshaw and Breslow met regularly on the case, fueled the investigation by giving certain unknown orders, maintained contact with the State Attorney's Office and handled the press coverage of the arrest of Dees, the evidence in the record fails to support an inference that these defendants controlled the investigation from their supervisory positions. The undisputed evidence in the record shows that defendant Warshaw, as the immediate supervisor to Lieutenant Fleming, was frequently apprised of developments in the investigation. The record also contains evidence showing that Warshaw acted as a liaison between the police department and the state attorney's office and that he made sure the investigation had sufficient resources. The undisputed testimony of defendant Warshaw, however, indicates that his involvement ended there and that he never gave any instructions as to how to go about the actual investigation. The record shows that defendant Breslow had an even more limited role in the investigation; Breslow's undisputed deposition testimony shows that he was only periodically apprised of important developments. Because the evidence in the record fails to rise to a level where a reasonable jury could find that Warshaw and Breslow exer-

cised control over or directed the third investigation into the Michael Johnson shooting, this Court finds that the plaintiff failed to meet its burden under *Anderson, supra.* Accordingly, summary judgment is granted in favor of defendants Warshaw and Breslow.

## V

■ In order to be awarded damages from a municipality under section 1983, a plaintiff must prove, among other things, that action was taken pursuant to official municipal policy of some nature that caused a constitutional tort. *Pembaur v. Cincinatti,* 475 U.S. 469, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986). Municipalities cannot be held liable under a policy of respondeat superior; the official policy must cause the constitutional violation. *Id.* 106 S.Ct. at 1298. Existence of an official policy or custom can be shown through proof of "persistent and widespread ... practices of state officials." *Monell v. Dept. of Soc. Serv. of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Alternatively, single decisions by municipal employees that result in constitutional deprivations can lead to section 1983 liability where the decision causing the constitutional violation is made by an individual who possesses "final authority to establish municipal policy with respect to the action ordered." *Id.* 106 S.Ct. at 1299. Exactly who possesses this final decisionmaking authority depends entirely on state law. *St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). The judge, rather than the jury, determines who has final decisionmaking authority under state law. *Id.* (O'Connor, J., plurality).

■ In support of its allegations that a municipal policy resulted in the violation of the plaintiff's constitutional rights, the plaintiffs point to the following facts in the record. First, the plaintiff notes the inconsistent testimony of Defendants Breslow and Warshaw with that of defendant Fleming. On the one hand, Breslow and Warshaw indicate that the written policy of the Miami Police Department was that all members of the department be truthful in all matters related to their employment. On the other hand, Fleming testified during his deposition that an accepted practice during a criminal investigation is to sometimes exaggerate or to make untrue statements in an effort to draw out a witness' testimony. Second, the plaintiff notes that Kemp's account of the interview in Marion County supports an inference that this policy of truthfulness, referred to above, was not being adhered to during the course of the interview. Third, Kemp also claims that at the interview in Marion County the investigators threatened, intimidated and coerced him. Fourth, the plaintiff alludes to a "conflict between Lieutenant Fleming's testimony and that of Detective Ilhardt on the subject of recorded telephone calls." Lastly, the plaintiff alludes to public allegations that the first two investigations into the Michael Johnson shooting were inadequate and the resulting public pressure on the police department. On the basis of these facts, the plaintiff argues that a reasonable jury could reach the following conclusions: 1) that there was a policy regarding the intentional creation and utilization of false evidence in support of false arrests and false imprisonments; 2) that the City of Miami, established a policy of inadequate training, discipline and remedial action on the part of the City of Miami Police Department with respect to officers' investigative and arrest functions; 3) that the City of Miami has a policy of inadequate supervision.

The Court rejects the plaintiff's analysis. To begin with, looking at the evidence in the light most favorable to the plaintiff, the evidence fails to support plaintiff's contention that defendants Ilhardt and Fleming gave inconsistent statements concerning the subject of recorded telephone calls. On the contrary, the testimony the two defendants gave is remarkably similar. Defendant Ilhardt stated in his deposition testimony that recording telephone conversations during the course of a criminal investigation without the consent of the parties on the telephone is "against the law." Deposition of Ilhardt at p. 42. Similarly, defendant Fleming stated in his deposition

that recording phone conversations without the consent of the parties on the line was not an acceptable investigative technique. Deposition of Fleming at pp. 90–91. The plaintiff's entire proof of municipal policies that caused the plaintiff's alleged constitutional deprivations, therefore, lies in the remaining facts alluded to above. Moreover, with respect to the third fact, the alleged coercion used by the investigators during the interview in Marion County, the record does not reveal any instance of physical threats, coercion or intimidation. Instead, the alleged coercion and intimidation stems from three statements made by the investigators. First, defendants Ilhardt and Fleming both told Kemp at the Ocala meeting that they could not guarantee the position he then held in the Marion County Sheriff's Department unless he cooperated with the investigators and answered their questions. Second, Ilhardt accused Kemp of falsifying an accident report which described the collision between the police car and Michael Johnson's car in 1980. Third, the investigator from the state attorney's office stated that he would not rest until Kemp was in jail for his actions connected with the shooting of Michael Johnson.

The facts alluded to by the plaintiff, examined in the light most favorable to the plaintiff's position, fail to adequately support an inference that the City of Miami had in place a policy, practice or custom which caused the plaintiff's alleged constitutional violation. To begin with, no reasonable jury could infer from these facts that the City of Miami, as a matter of policy, practice or custom, intentionally created false evidence to be used to support arrests and prosecutions. The plaintiff provides evidence, which, taken in the light most favorable to him, shows that the investigators made untrue statements in an effort to elicit answers to some of their questions, threatened his employment relationship unless he answered their questions and promised that they would stubbornly persist in the investigation. The plaintiff, however, fails to produce evidence that these actions were taken in an attempt to create evidence which the officers knew

was false. In fact, the undisputed testimony in the record indicates that these actions were not meant to elicit any specific predetermined responses, let alone knowingly false statements. Defendant Ilhardt's affidavit at paragraph 9 provides:

At no time during that conversation [between the investigators and Kemp in Ocala] did I express or suggest the nature and type of information I wished Mr. Kemp to provide.

When asked if that was a true statement, Mr. Kemp responded in his deposition at page 16 by saying "I would have to say no, he did not say that, that the statement is correct." When asked if the same statement would be true if made by either defendant Vivian or Fleming, Kemp responded, "I would say that would be a true statement." With the undisputed evidence in the record indicating that the investigators were not inducing Kemp to make any predetermined statements, the plaintiff certainly fails to provide this court with sufficient evidence by which a reasonable jury could conclude that the City of Miami had a policy of intentionally creating false evidence.

Even if there was a knowing use of false evidence involved in the arrest and prosecution of John Dees, the record does not support the inference that the City of Miami had a policy, practice or custom of intentionally creating and then using false evidence. To begin with, the plaintiff does not provide any evidence that in any investigation other than the third Michael Johnson investigation city police officers intentionally created and then used false evidence in arresting and prosecuting a suspect. As such, the acts complained of in this action consist of an isolated incident. In order to prove that the constitutional violation resulted from city policy, therefore, the plaintiff must show that the city's final decisionmaking official in this context made the decision to create and use the bad evidence. *Pembaur*, 106 S.Ct. at 1299–1300.

The Court finds that no reasonable jury could conclude from the evidence in the record that the final decisionmaking au-

thority on criminal investigations ordered that false evidence be created and used during the course of this investigation. The plaintiff does not provide this court with any evidence that the chief of police made such a decision. In addition, the plaintiff does not show that any other supervisory police department officials involved in the investigation ordered, directed or decided that false evidence be created and used. In fact, the undisputed evidence in the record indicates that neither Assistant Chiefs of Police Breslow or Warshaw made any decisions with regard to the way the investigation was to be carried out. At most, the plaintiff shows that the incident brought adverse publicity to the police department and that the department was anxious to successfully end the investigation. No reasonable jury can infer from this alone, however, that the police chief or the assistant police chiefs consequently agreed to single out the police officers as scapegoats and set them up through the use of false evidence.

The evidence also fails to adequately support an inference that the City of Miami had a policy of inadequate training or supervising its police officers resulting in the violation of the plaintiff's constitutional rights. In order for a city's failure to train or supervise its police officers to constitute a policy or custom that is actionable under § 1983, the failure to train or supervise must evidence a "deliberate indifference to the rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). Put otherwise, the failure to train or supervise resulting in § 1983 liability must result from "a deliberate choice to follow a course of action ... made from among various alternatives by city policy makers." *Id.* Courts deem city policy makers deliberately indifferent to the rights of its inhabitants when they fail to provide proper training or supervision if, in light of the duties assigned to specific officers or employees, the need for more or different training is very obvious and the inadequacy quite likely to lead to the violation of constitutional rights. *Id.* 109 S.Ct. at 1205. Moreover, for liability to attach, the inade-

quate training or supervision policy must be closely related to the constitutional violation. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 1206. For instance, an otherwise sound training and supervision program may be administered negligently. *Id.* Additionally, the fact that an officer makes a mistake is insufficient to show that a training program is deficient, for even adequately trained officers err. *Id.*

The Court finds that the evidence in the record does not allow a reasonable jury to conclude that the City of Miami had a policy of inadequate training or supervision amounting to a deliberate indifference to the rights of its citizens. As proof of an inadequate training policy, plaintiff, in his briefs and memoranda, primarily points to defendant Flemings' belief that the use of deception in attempts to elicit witness statements was a proper investigative technique despite the written policy of the City of Miami Police Department. The plaintiff, however, fails to provide any evidence as to how the City of Miami specifically trained or supervised its police officers in this regard. Plaintiff fails to provide any evidence of how this training or supervision is inadequate in this identified respect. Plaintiff fails to provide any evidence that the need for any additional training or supervision is so obvious that failure to provide for it amounts to deliberate indifference among city policymakers to the rights of city inhabitants. Lastly, the plaintiff fails to provide any evidence (or even a precise theory) that any inadequate training or supervision caused his constitutional deprivation. Due to these complete failures of proof, this Court finds that no rational and reasonable trier of fact could find that a policy of inadequate training or supervision caused the violation of plaintiff's constitutional rights.

Assuming for the moment that the facts permit a reasonable jury to infer that a City of Miami policy, practice or custom of inadequately training or supervising its officers and thereby allowing them to lie to or verbally intimidate potential witnesses

to get them to speak existed,[3] the Court finds that the undisputed facts in the record do not adequately support the inference that either the failure to adequately train or supervise the officers caused Dees' arrest to be based on false evidence, or, more specifically, a false confession by Kemp. As discussed above, the undisputed evidence in the record indicates that the alleged threats and deceptive statements made to Kemp in Ocala by City of Miami police officers were made more than a week prior to the time Kemp gave Yoss his sworn statement. Neither side disputes that at the time the alleged threats were made, Kemp, a veteran police officer, made no comments of any substance and instead chose to speak to his attorney rather than speak to the investigators. Nor does either side dispute that at the time Kemp gave his sworn statement he was accompanied and represented by two attorneys. Even in the light most favorable to the plaintiff, the evidence does not support a causal relationship between any exaggerations and lies made by the investigators at the Ocala interview and the confession given by Kemp thirteen days later. As a matter of law, too much time elapsed and too many intervening factors took place between the Ocala interview and the confession for a reasonable jury to infer that the events at the Ocala interview caused Kemp to give a false confession.

## VI

■ Since no independent source of subject matter jurisdiction over the pendent state claims in Counts XI and XII of the Amended Complaint exists and since this Court's ruling on the motions for summary judgment eliminates all federal claims in the case, this Court chooses to exercise its discretion and dismiss the pendent state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The dismissal of the state claims, of course, is without prejudice to any right the plaintiff may have to proceed with these pendent claims in a state court of competent jurisdiction.

**3.** Stripped to its essentials, this is what the plaintiff's theory of inadequate training and su-

## VII

The Court today finds that the individual defendants and the City of Miami are entitled to summary judgment. The qualified immunity doctrine protects defendants Fleming, Vivian and Ilhardt. The Court also finds that the plaintiff has failed to submit sufficient evidence from which a reasonable jury could conclude that either Breslow, Warshaw or the City of Miami caused the plaintiff to suffer a constitutional deprivation. Lastly, the Court chooses to wield its discretion and dismiss the pendent state claims for false imprisonment and malicious prosecution.

Thereupon, it is ORDERED AND ADJUDGED that final summary judgment be entered for and in favor of the City of Miami and each of the individual defendants as to Counts I, II, III, IV, V, VI and VIII of the Amended Complaint. Counts XI and XII, the only other remaining counts, are dismissed without prejudice pursuant to *Gibbs, supra*. Defendants are awarded costs to be taxed by the Clerk of the Court upon their filing of a bill of costs.

DONE AND ORDERED.