GRUENDER, Circuit Judge, concurring in part and dissenting in part.
 

 I agree that the district court erred in granting qualified immunity on Michael's excessive-force claims. As the court explains, because a tree partially obscures the only video of the arrest, there remain genuine questions of material fact concerning the extent to which Michael resisted arrest and the degree of force the officers employed.
 
 See
 

 ante
 
 at 532-33. Thus, I join that portion of the court's opinion. But, for two reasons, I respectfully dissent from the reversal of summary judgment as to Michael's unlawful-arrest claims.
 

 First, the court misconstrues the record in "assuming, for the purpose of summary judgment, that Michael's sister intentionally ran over his foot."
 
 Ante
 
 at 533. While we generally must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party, the Supreme Court has made clear that we cannot accept allegations that are contradicted by reliable video evidence.
 
 See
 

 Scott v. Harris
 
 ,
 
 550 U.S. 372
 
 , 380-81,
 
 127 S.Ct. 1769
 
 ,
 
 167 L.Ed.2d 686
 
 (2007). Having reviewed the video here, I simply disagree that "[t]he recordings are at best inconclusive" as to whether Michael's sister intentionally ran over his foot.
 
 Ante
 
 at 533. Officer Chaffee's dash-camera video clearly shows that, as Michael's sister begins to drive off, he takes three backward steps away from the van before suddenly extending his right foot under the vehicle's rear, passenger-side tire. This video disproves Michael's claim that his sister intentionally ran over his foot. Indeed, Michael moved into the path of the vehicle so quickly that it would have been impossible for her to deliberately speed up or fail to stop, even if she could have seen his foot under the rear tire of the forward-moving vehicle. Thus, I do not accept the court's characterization of Michael's report to officers as "a matter of opinion (that, by definition, cannot be true or false)."
 
 Ante
 
 at 534. The video conclusively demonstrates that Michael deliberately put his foot under the vehicle, that his sister could not have intended to run it over, and that he made a false report to officers on both scores.
 

 Second, and more problematically, the court misapplies the arguable probable cause standard in light of relevant statutory ambiguity.
 
 See
 

 Walker v. City of Pine Bluff
 
 ,
 
 414 F.3d 989
 
 , 992 (8th Cir. 2005) ("Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim is not probable cause in fact but arguable probable cause ... that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." (internal quotation marks omitted) ). North Dakota's false-report statute makes it a crime to "[g]ive[ ] false information or a false report to a law enforcement officer which that person knows to be false, and the information or report
 
 may
 
 interfere with an investigation
 or
 
 may
 
 materially mislead a law enforcement officer."
 
 N.D. Cent. Code § 12.1-11-03
 
 (1) (emphasis added). As this case demonstrates, the final clause of this provision allows for several plausible interpretations: (1) that the false information or report must,
 
 in fact
 
 , interfere or mislead-as Michael suggests; (2) that the false information or report must,
 
 under the circumstances
 
 , be
 
 capable of
 
 interfering or misleading, in light of the officer's subjective knowledge as to the validity of the information or report-the standard adopted by the court; or (3) that the false information or report is
 
 of the type
 
 that
 
 may
 
 interfere or mislead given its relation to an officer's law enforcement duties-as the officers contend.
 

 The officers' interpretation strikes me as the most natural reading of statute, as the alternatives each require a deviation from the text.
 
 See
 

 Johnson v. Dept. of Transp.
 
 ,
 
 683 N.W.2d 886
 
 , 889 (N.D. 2004) (explaining that North Dakota statutes are to be interpreted by looking at the "plain language of the statute and giv[ing] every word of the statute its ordinary meaning"). For example, the final clause of the provision refers generally to "a law enforcement officer," not specifically to
 
 the
 
 officer who received the false report, which suggests a more objective standard than that adopted by the court. Nor is there any language in the provision indicating that the false report must actually interfere or mislead. Nevertheless, resolving this statutory ambiguity is not our task today. Instead, we must determine whether a reasonable officer could conclude that Michael's false report-that he did not deliberately put his foot under the vehicle and that his sister intentionally ran over his foot-was sufficient to constitute a violation of the statute.
 

 Given that there is no North Dakota caselaw clarifying the ambiguous "may" provision and that the officers' interpretation is at the very least reasonable, their arrest of Michael did not violate clearly established law.
 
 See
 

 Lawyer v. City of Council Bluffs
 
 ,
 
 361 F.3d 1099
 
 , 1108 (8th Cir. 2004) (emphasizing that "[p]olice officers are not expected to parse code language as though they were participating in a law school seminar" and concluding that a challenged arrest "did not violate clearly established law" where a reasonable officer could believe that the plaintiff-arrestee's conduct violated an ambiguous provision, even if a state court later concluded that it did not);
 
 see also
 

 Gorra v. Hanson
 
 ,
 
 880 F.2d 95
 
 , 98 (8th Cir. 1989) ("Because the law had not been construed at the time of the arrest, and because the troopers' interpretation was not inconsistent with common understanding, we cannot say that [their] interpretation of the statute was unreasonable."). Under the officers' reasonable reading of statute, both of Michael's statements would qualify as a false report because they may have led officers to investigate or even arrest his sister. Therefore, the officers had at least arguable probable cause to arrest Michael.
 

 Accordingly, I concur in the court's reversal of summary judgment as to Michael's excessive-force claims but dissent from its reversal of summary judgment as to his wrongful-arrest claims.